Argued and submitted February 24, McKay High School, Salem, reversed April 1, 2015

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ZACHARY DURAND KREFT,
*Defendant-Appellant.*

Marion County Circuit Court
12C46144; A154622

346 P3d 1294

Mark J. Geiger argued the cause and filed the brief for appellant.

Michael S. Shin, Senior Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.

SERCOMBE, P. J.

**SERCOMBE, P. J.**

Defendant was charged with second-degree disorderly conduct pursuant to ORS 166.025(1)(a) based on the allegation that he "did unlawfully and recklessly create a risk of public inconvenience, annoyance and alarm by engaging in violent, tumultuous and threatening behavior." Following a trial to the court, defendant was convicted of that charge. On appeal, he challenges the trial court's denial of his motion for judgment of acquittal, asserting that there was not legally sufficient evidence to support a conviction for second-degree disorderly conduct. As explained below, we agree with defendant that there was not legally sufficient evidence that he had engaged in "fighting or in violent, tumultuous, or threatening behavior" under ORS 166.025(1)(a). Accordingly, we reverse.

We state the relevant facts "in the light most favorable to the state, 'accepting reasonable inferences and reasonable credibility choices that the factfinder could have made.'" *State v. Atwood,* 195 Or App 490, 492, 98 P3d 751 (2004) (quoting *State v. Presley,* 175 Or App 439, 443, 28 P3d 1238 (2001)). Early on a sunny evening in August 2013, G, a nine-year-old girl, was with her family at a public park. G played in a water feature in the park in her swimming suit and then asked her parents if she could go and look at a statue about 50 feet away. While G was near the statue, defendant—whom G did not know—approached her and asked her what time it was. While he asked the question, defendant stood near G but did not touch her. G responded that she did not know the time and her father, Ramirez, who had seen defendant speak to G, began walking toward the two. As she observed Ramirez walking toward them, G, who felt afraid, said, "Dad." Defendant, who had continued to stand and look at G after she responded to his question, then walked away. According to Ramirez, defendant had "some kind of surprise in his face" and then, as he walked away, turned and looked back at G. Ramirez described the look as "no good at all." G's mother then called 9-1-1. Ramirez was angry as a result of defendant's conduct.

Ramirez followed defendant and observed him approach several other girls and women. Some of the women

looked at their wrists as though they were telling defendant the time. Ramirez also saw defendant speak with a woman who then stood and gave him a hug. After observing defendant, Ramirez asked a woman working in the park to call 9-1-1, which she did.

As defendant crossed the street to leave the park, he was detained and, eventually, arrested and charged with second-degree disorderly conduct. After the state presented its case, defendant moved for a judgment of acquittal. Citing *State v. Cantwell*, 66 Or App 848, 676 P2d 353, *rev den*, 297 Or 124 (1984), he contended that the conduct in question did not satisfy the elements of the statute. The court denied defendant's motion, and subsequently convicted him of second-degree disorderly conduct.

On appeal, as noted, defendant contends that the trial court erred in denying his motion for judgment of acquittal. In reviewing a trial court's denial of a motion for judgment of acquittal, viewing the evidence in the light most favorable to the state, we must "determine whether a rational factfinder could have found the elements of the crime[] in question beyond a reasonable doubt." *State v. Reed*, 339 Or 239, 243, 118 P3d 791 (2005).

Pursuant to ORS 166.025(1)(a), a person "commits the crime of disorderly conduct in the second degree if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, the person * * * [e]ngages in fighting or in violent, tumultuous or threatening behavior[.]" Although "[n]o statute defines the term 'violent, tumultuous or threatening behavior,'" *Atwood*, 195 Or App at 495, we addressed the meaning of those terms in *Cantwell*. We concluded that ORS 166.025(1)(a) does not "encompass speech in the term 'behavior,'" but refers "only to physical acts of violence." *Cantwell*, 66 Or App at 852 (rejecting the defendant's contention that the statute is unconstitutionally overbroad); *see also id.* ("'[F]ighting' and 'violent,' 'tumultuous or threatening behavior' describe physical acts of aggression." (Brackets in original.)). We further concluded that "ORS 166.025(1)(a) makes unlawful only the use of physical force or physical conduct which is immediately likely to produce the use of such force and which is intended

to create or recklessly creates a risk of public inconvenience, annoyance or alarm." *Id.* at 853 (rejecting argument that the statute is unconstitutionally vague).

"Thus, a person violates ORS 166.025(1)(a) if he or she, with the requisite mental state, either (1) uses physical force or (2) engages in physical conduct that is immediately likely to produce the use of physical force." *State v. Miller*, 226 Or App 314, 317, 203 P3d 319 (2009). Furthermore, as we noted in *Atwood*, physical force "connotes the actual use of strength or power" and does not refer to "actual but incidental physical contact." 195 Or App at 498.

We applied *Cantwell's* construction of ORS 166.025(1)(a) in *State ex rel Juv. Dept. v. Krieger*, 177 Or App 156, 33 P3d 351 (2001). There, the youth, while "upset with the principal for calling him into his office and taking his [school] folder," approached two students, separately, asking if they would like to help him "blow up or shoot up the school." 177 Or App at 158. After those two students declined to help him, the youth "pulled a third student aside and spoke to him privately, asking if the student wanted to help him blow up the school." *Id.* "In the third incident, youth grabbed hold of the student's shoulder and guided the student to a place where youth could address him privately." *Id.* at 161. The third student also refused to help the youth. The youth was later found within the jurisdiction of the juvenile court for, among other things, conduct that, if committed by an adult, would constitute second-degree disorderly conduct pursuant to ORS 166.025(1)(a).

On appeal, we observed that, under *Cantwell*, the determination of "whether youth engaged in 'threatening behavior' prohibited by the disorderly conduct statute must be answered by looking at his physical actions * * *." *Krieger*, 177 Or App at 160. We noted that nothing in the youth's physical conduct constituted "the sort of physical force or physical conduct likely to produce such force that the disorderly conduct statute prohibits." *Id.* at 161; *see also id.* ("While grabbing hold of someone's shoulder is a physical act, it is also a common method of gaining someone's attention and does not rise to the level of physical force required under the statute."). We further concluded that the youth's act of

"approaching three students separately and gaining their attention" was not "immediately likely to produce physical force." *Id.* at 161. Accordingly, we reversed the adjudication on the disorderly conduct charge. *See also City of Eugene v. Lee,* 177 Or App 492, 500, 34 P3d 690 (2001) (reversing conviction under city ordinance identical to ORS 166.025(1)(a), concluding that the defendant's conduct of loudly preaching and haranguing passersby while pounding on his Bible did not constitute acts of physical aggression).

We again addressed the application of ORS 166.025(1)(a) in *Atwood.* In that case, the defendant was angry after his daughter had missed the bus and been told by the school secretary that she could use the phone to call the defendant "only if she improved her attitude." 195 Or App at 492. Thereafter, the defendant came to the school and angrily demanded to see both the secretary and the school principal. The principal came out of the office to speak to the defendant and told him that the secretary was gone for the day. Defendant then "blew up" and "became agitated and upset and * * * brought up his fists and pointed his finger" and loudly told the principal to let the secretary "know that he was going to take off her head and shit down her throat." *Id.* at 493 (internal quotation marks omitted). After the principal asked the defendant to leave, as he "walked through a set of doors, [the defendant] turned around, and screamed" a similar message for the secretary at the top of his lungs. *Id.* at 493-94.

On appeal, we considered whether that conduct was sufficient to sustain a conviction for second-degree disorderly conduct pursuant to ORS 166.025(1)(a). We first observed that the defendant's conduct did not involve or constitute the use of physical force: "[T]here was no physical impact at all; [the] defendant merely gestured angrily. That did not constitute the use of physical force." *Id.* at 498 (internal quotation marks omitted). We then addressed the question whether a trier of fact could determine that the defendant had engaged in physical conduct that was immediately likely to produce the use of physical force. We began by noting that that inquiry

"implicates a question about *Cantwell*'s formulation that no succeeding case has addressed: 'Likely to produce the use of such force' *by whom*? That is, under *Cantwell*, is the defendant liable for engaging in physical conduct 'which is likely to produce the use of such force' by (1) the defendant himself or herself or (2) some other person who is either the object of the defendant's conduct or who witnesses that conduct?"

*Id.* (emphasis in original). However, we determined that we did not need to resolve that question because, in either case, "the evidence was legally insufficient to permit the trier of fact to infer that [the] defendant's physical conduct, when viewed in the totality of the circumstances, was" immediately likely to produce the use of such physical force. *Id.* In so concluding, we emphasized that, although the statute punishes only physical acts of aggression, not speech, the trier of fact may consider "a defendant's statements as part of the circumstantial context of particular conduct." *Id.* at 499. Although we considered the defendant's physical conduct of raising his fists and pointing at the principal in the context of his angry affect and statements, we nonetheless concluded that the state failed to prove that the defendant "used physical force or engaged in physical conduct likely to produce the use of such force by either [the] defendant himself or by an objectively reasonable third party responding to that conduct." *Id.* at 500. Accordingly, we reversed the defendant's conviction for disorderly conduct under ORS 166.025(1)(a).

With those cases in mind, we return to the facts of this case. Again, defendant in this case approached a nine-year-old girl in a public park and asked her an innocuous question—what the time was—without touching her. He stood and looked at her briefly after she answered him and, as he walked away after her father approached, defendant looked back in a way that the girl's father believed was "no good." The girl was afraid of defendant, and her father was angry as a result of defendant's conduct. Defendant then approached other girls and women in the park and appeared to ask them for the time and received a hug from one adult woman to whom he spoke. Defendant asserts that, in this case, "the act that was punished is walking up to

a nine-year-old girl. *** [T]he only physical act defendant engaged in is being near several young girls. That is not even close to what the statute prohibits."

We begin by noting that the state does not contend that defendant's conduct involved or constituted physical force, and with good reason; as we observed in *Atwood,* physical force "connotes the actual use of strength or power" and, here, defendant did not touch G at all. 195 Or App at 498. Thus, the only issue is whether a rational trier of fact could conclude, based on the facts presented, that defendant engaged in physical conduct that was immediately likely to produce the use of physical force.

As we also noted in *Atwood,* the question whether the physical conduct must be likely to produce such force by the defendant himself or whether the force likely to be produced may be from some other person responding to the defendant's conduct is an open question. *Id.* However, even assuming that the force in question could come from a third party, we nonetheless conclude that the evidence was legally insufficient to permit the trier of fact to infer that defendant's physical conduct, viewed in the totality of the circumstances, was immediately likely to produce the use of physical force from either source (defendant or a third party).

There is no evidence to support an inference that defendant, here, engaged in physical conduct that was immediately likely to produce the use of physical force by defendant himself. Again, defendant approached G, asked for the time, and then looked at her as her father approached and again while walking away. There was no evidence that defendant attempted to touch G or showed any signs that he would. Nor did he do so with the other girls and women he approached and asked for the time. Under the totality of the circumstances, a rational trier of fact could not conclude that defendant's physical conduct was immediately likely to produce physical force from defendant.

Likewise, the evidence is insufficient "if the pertinent inquiry is whether defendant's physical conduct was immediately likely to produce the use of physical force *by another person* (presumably, against defendant)." *Atwood,*

195 Or App at 500 (emphasis in original). Although there was evidence that Ramirez was angry about defendant's conduct, it is also true that, as Ramirez approached and G called out to him, defendant turned and walked away and avoided a confrontation. And, although he looked back at G as he walked away, there was no evidence that he engaged in any additional conduct toward G. Furthermore, when defendant's physical conduct toward G is considered in the context of his request to know the time, it seems even more innocuous. None of that conduct is sufficient to support a conclusion that an objectively reasonable person in Ramirez's position would have been likely to respond with physical force against defendant.

In addition, defendant's later conduct of approaching girls and women and asking for the time does not add anything significant to the analysis. Although there was evidence that defendant approached various girls and women and that some avoided speaking to him, there was no evidence that he persisted with those people or that he acted aggressively or in any other way that would be immediately likely to provoke the use of physical force against him.

Thus, we conclude that there was insufficient evidence to prove that defendant, with the requisite mental state, used physical force or engaged in physical conduct that was immediately likely to produce the use of physical force by either defendant himself or an objectively reasonable person responding to defendant's conduct. Accordingly, the trial court erred in denying defendant's motion for judgment of acquittal.

Reversed.