Argued and submitted December 16, 2015, conviction for disorderly conduct reversed; otherwise affirmed June 8, 2016

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

THOMAS BRYAN WADE,
aka Thomas Wade,
*Defendant-Appellant.*

Multnomah County Circuit Court
130546222; A156163

377 P3d 660

Laura E. Coffin, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Robert M. Wilsey, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Matthew J. Lysne, Assistant Attorney General.

Before Duncan, Presiding Judge, and DeVore, Judge, and Flynn, Judge.

## DEVORE, J.

In this criminal case, defendant appeals a judgment of conviction for second-degree disorderly conduct, ORS 166.025(1)(a).[1] He assigns error to the trial court's denial of his motion for a judgment of acquittal, arguing that the evidence was insufficient to support the conviction because he did not engage in physical conduct immediately likely to produce the use of physical force. In reviewing the denial of a motion for a judgment of acquittal, we view the evidence in the light most favorable to the state to determine whether any rational factfinder could have found the elements of the offense beyond a reasonable doubt. *State v. Evans,* 161 Or App 86, 89, 983 P2d 1055 (1999). We reverse.

The facts are undisputed. Seals took her seven-year-old son to a Gresham city park. She noticed that defendant was standing on a park sidewalk, digging through clothing in a stroller and throwing the clothing on the ground. Defendant was homeless and had mental health issues. As Seals walked toward the play area of the park, defendant began shouting, somewhat incoherently, in her direction from of a distance of "no more" than 30 feet.[2] Seals turned toward defendant, who was yelling. He called her "a bitch" and began to unfasten his pants. Seals saw defendant remove his belt, unzip his pants, arch his pelvis in her direction, and reach with one hand into his pants toward his genitals. It appeared to her that defendant was about to expose himself, but she turned away and did not see his genitals. Defendant "kept referring to [Seals] as a bitch," and told her, "Come over here." Seals's son began to cry. Frightened, Seals left the park with her son and called the

---

[1] ORS 166.025 provides, in part:

"(1) A person commits the crime of disorderly conduct in the second degree if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, the person:

"(a) Engages in fighting or violent, tumultuous or threatening behavior[.]"

[2] Seals testified that defendant was "[a] pretty good distance" away from her. The court noted in its opinion letter that Seals "was not able to say how many feet away he was, but said it was no more than from where she sat on the witness stand to the back of the courtroom, which the court notes is approximately 30 feet."

police. Defendant remained "agitated" during his contact with the responding police officers.

Defendant was arrested and charged with public indecency and disorderly conduct. He waived his right to a jury and proceeded to a bench trial. At the end of the state's case, defendant moved for a judgment of acquittal on both counts.[3] As to the count for disorderly conduct, defendant argued that he did not engage in any physical force or physical conduct immediately likely to produce the use of physical force. *See State v. Atwood,* 195 Or App 490, 500, 98 P3d 751 (2004) (holding that the statute requires such proof).

The trial court issued a letter opinion denying the motion for a judgment of acquittal. The court ruled that the context of the incident "suggests to a reasonable person that a violent sexual attack is likely to occur" and that defendant's "threatening behavior—his physical conduct evaluated in context with his statements—recklessly created a risk that Ms. Seals would be alarmed by his behavior." In its ruling, the court relied at least in part on Seals's testimony that she had been frightened by defendant's conduct.

On appeal, defendant argues that the trial court erred in denying his motion. Defendant contends that there was insufficient evidence that he engaged in violent, tumultuous, or threatening behavior, because his conduct neither constituted physical force nor was "immediately likely to produce physical force." The state's response is two-fold. First, the state responds that there was sufficient evidence that defendant engaged in physical conduct that was likely to produce physical force by *defendant* himself against Seals. Second, the state contends that "the evidence was sufficient to infer that defendant's physical conduct was likely to cause *Seals* to use physical force to defend herself or her child." (Emphasis added.)

We begin by describing the elements of second-degree disorderly conduct. The offense requires that a person, "with intent to cause public inconvenience, annoyance

---

[3] The court ultimately granted defendant's motion for a judgment of acquittal on the count for public indecency. Our disposition does not disturb that part of the judgment that acquits defendant of public indecency.

or alarm, or recklessly creating a risk thereof * * * [e]ngages in fighting or violent, tumultuous or threatening behavior[.]" ORS 166.025(1)(a). The phrase, "violent, tumultuous or threatening behavior," is not defined by statute. *Atwood*, 195 Or App at 495. We have, however, addressed the meaning of the phrase. In *State v. Cantwell*, 66 Or App 848, 676 P2d 353, *rev den*, 297 Or 124 (1984), in response to an argument that the phrase was unconstitutionally overbroad and vague, we concluded:

> "We construe the terms 'fighting,' 'violent,' 'tumultuous,' and 'threatening' to have their commonly understood referents to physical force. We hold that ORS 166.025(1)(a) makes unlawful only the use of physical force or physical conduct which is immediately likely to produce the use of such force and which is intended to create or recklessly creates a risk of public inconvenience, annoyance or alarm."

*Id.* at 853. Later, in *Atwood*, we emphasized that ORS 166.025(1)(a) "punishes only 'physical acts of aggression, not speech.'" 195 Or App at 498 (quoting *Cantwell*, 66 Or at 852). A defendant's speech, however, may be considered by the factfinder "as part of the circumstantial context of particular conduct." *Atwood*, 195 Or App at 499.

In *Atwood*, we applied our construction of "fighting, tumultuous, and threatening behavior." *Id.* at 495. The defendant was apparently aggrieved by an interaction between his daughter and a secretary at the daughter's school. He appeared at the school's administrative office demanding to speak to the secretary and the school principal. When told that the secretary had left for the day, the defendant "'blew up.'" *Id.* at 493. He gesticulated angrily with his fists, pointed at the principal, and told the principal that "'he was going to take off [the secretary's] head and shit down her throat.'" *Id.* After being asked to leave, the defendant walked through a set of doors, turned around, and continued shouting similar obscenities "'at the top of his lungs.'" *Id.* at 493-94. During the entirety of the defendant's outburst, the secretary, who had not in fact left for the day, remained out of view in the back of the office.

Among other things, the defendant was charged with disorderly conduct under ORS 166.025(1)(a). On appeal,

we considered the defendant's argument that the trial court had erred in denying his motion for a judgment of acquittal and concluded that the evidence was "legally insufficient to allow a trier of fact to infer that defendant engaged in 'violent, tumultuous or threatening behavior' within the meaning of ORS 166.025(1)(a)[.]" *Id.* at 492. We explained that the case presented a close question as to whether a trier of fact could determine beyond a reasonable doubt that the defendant had engaged in "'physical conduct which [was] immediately likely to produce the use of such [physical] force.'" *Id.* at 498 (quoting *Cantwell*, 66 Or App at 853). We observed that the context of the defendant's conduct "establishes that, while defendant was extremely angry, the object of his anger was [the secretary], who was not visibly present, and not [the principal]. In fact, for that reason, * * * [the principal] was unconcerned that defendant's conduct was immediately likely to produce the use of physical force against him." *Id.* at 499. We concluded that it was unnecessary to address *by whom* physical force is likely to be produced—whether by defendant or by some other "objectively reasonable third party responding" to the defendant's conduct. *Id.* at 498, 500. That question has not since been resolved, and, again, it is unnecessary to resolve in this case.

Defendant's conduct did not involve "use of physical force." *See State v. Davies*, 195 Or App 534, 537, 98 P3d 757 (2004) (evidence legally sufficient for conviction for disorderly conduct where defendant made physical contact with third persons and "[a] fracas ensued, resulting in various injuries" to several of those individuals). Therefore, our only question is whether a reasonable factfinder could determine beyond a reasonable doubt that defendant engaged in "physical conduct which [was] immediately likely to produce the use of such [physical] force." *Cantwell*, 66 Or App at 853.

We conclude that the evidence was legally insufficient to support a conviction for disorderly conduct, because defendant did not engage in physical conduct immediately likely to produce the use of physical force either from himself or from an observer. As noted, the state first argues that defendant's conduct presaged a likely physical assault by defendant himself. Defendant stood at a distance of "no more" than 30 feet from Seals while arching his pelvis,

yelling incoherent obscenities, unfastening his pants, and reaching as though he was about to expose his genitals. However, the evidence was insufficient to support the inference that defendant's conduct was "immediately likely" to produce his use of physical force, because he was unarmed and remained standing at a distance from Seals, took no steps toward her, and did not otherwise indicate that he would begin closing the distance between them. *See State v. Kreft*, 270 Or App 150, 156, 346 P3d 1294 (2015) (evidence was insufficient to support a conviction for disorderly conduct where defendant asked a nine-year-old girl in a park for the time and there was no evidence that he attempted to touch her or showed signs that he would do so). Defendant's command for Seals to "come here" does not reasonably imply that he was "immediately likely" to attack her.

The state next argues that "the evidence was sufficient to infer that defendant's physical conduct was likely to cause Seals to use physical force to defend herself or her child." Physical force "connotes the actual use of strength or power." *Atwood*, 195 Or App at 498 (citing *Webster's Third New Int'l Dictionary* 474, 887 (unabridged ed 1993)). To be sure, the object of defendant's anger, Seals, was present, and she was frightened by his conduct. Nevertheless, at the distance described, the evidence does not permit a reasonable inference that Seals was close enough to defendant to be "immediately likely" to leave her child and engage in self-defense or defense of her child.

Although distasteful, the evidence of defendant's conduct was legally insufficient, regardless whether the immediate likelihood of physical force is assessed with reference to defendant or an observer. Accordingly, the trial court erred in failing to grant the motion for a judgment of acquittal on the charge of second-degree disorderly conduct.

Conviction for disorderly conduct reversed; otherwise affirmed.