Argued and submitted July 15, affirmed October 30, reconsideration denied November 8, 1985, petition for review denied January 14, 1986 (300 Or 477)

STATE OF OREGON,
*Respondent,*

*v.*

LEO JUSTIN HUND, SARAH SIMPSON BARTON,
WALLACE ANDREW BORTZ, LINDA LEE SEBRING,
MARGARET ANN UNDERWOOD,
*Appellants,*

(CA A34028 (Control))

STATE OF OREGON,
*Respondent,*

*v.*

MICHAEL PERRONE,
*Appellant.*

(8406-1159 m, 8407-1625 m; CA A34774, A34775)
(Cases Consolidated)

708 P2d 621

Terrance P. Gough, Eugene, argued the cause for appellants Leo Justin Hund, Wallace Andrew Bortz, Linda Lee Sebring, Margaret Anne Underwood and Michael Perrone. With him on the brief was Thomsen, Gough & Gough.

Craig A. Lytle, Lake Oswego, filed the brief for appellant Sarah Simpson Barton.

Richard D. Wasserman, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, James E. Mountain, Jr., Solicitor General, Salem, and Christine I. Jensen, Certified Law Student, Salem.

Before Gillette, Presiding Judge, Joseph, Chief Judge, and Young, Judge.

GILLETTE, P. J.

## GILLETTE, P. J.

Defendants appeal their convictions for disorderly conduct resulting from their efforts to disrupt Willamette Industries' logging activities in the Pyramid Creek area of eastern Linn County. They assert that the trial court erred by refusing to admit evidence on defendants' choice of evils defense and that it should have *sua sponte* granted a judgment of acquittal because there was no evidence that defendants intended to cause "*public* inconvenience, annoyance or alarm" by their actions. ORS 166.025(1) (emphasis supplied). We affirm.

Defendants are enviromental activitists who oppose logging the old growth timber stands which are located on Pyramid Creek in the Willamette National Forest. There has been considerable controversay and litigation for a number of years over the plans of the United States Forest Service to sell the timber. In 1982, the Forest Service sold the timber to Willamette Industries, which soon afterwards did the rough work to extend a road to the sale area, including cutting the timber in the roadway. In December, 1982, several enviromental groups filed a lawsuit in federal court seeking to enjoin the sale. The court refused to order suspension of logging. The area was also under consideration by Congress for wilderness status. Willamette felled about 760,000 board feet of timber in early 1983. In November, 1983, the federal court granted summary judgment for the government and dismissed the lawsuit; the environmental groups appealed that action. In July, 1984, Congress adopted a wilderness act which excluded the Pyramid Creek area; the environmental groups then dismissed their appeal.

The events involved in this case occurred on June 4, 1984, before the passage of the wilderness bill and while the federal appeal was still pending. At the time, Willamette was taking out the logs it had previously felled. Defendants and others stood across a bridge over Pyramid Creek and prevented several of Willamette Industries' log trucks from going to the loading area. Defendants were courteous throughout the incident and emphasized their non-violent intent. They also made it clear that their purpose was to block only Willamette vehicles and that they would allow anyone else to

pass without obstruction. Their stated purpose was to preserve the area's enviromental values, which Willamette's activities were allegedly destroying, at least until Congress and the appellate courts could act. They believed that they had exhausted other methods of protecting the area and that direct action was the only alternative left to them. The demonstration lasted about four hours and ended when sheriff's deputies arrested defendants.

■        Defendants first argue that the court erred when it granted the state's pretrial motion to exclude all evidence relating to the choice of evils defense provided in ORS 161.200.[1] Before ruling, the court held a hearing at which defendants presented their evidence on the issue. That evidence showed that Willamette had authority from the Forest Service to do what it was doing and that defendants' attempts to get federal court orders stopping Willamette's actions, both before and after summary judgment was granted to the government, had been unsuccessful.

The choice of evils defense was not available. If Willamette's actions were illegal, defendants had legal means available to stop them. They attempted to do so and were rebuffed. The federal court had the authority to determine whether Willamette and the Forest Service were violating the laws that defendants claimed they were violating and to stop any violations. That defendants, or others asserting defendants' position, had time to go to a court with power to act shows that there was no "emergency" requiring immediate

---

[1] ORS 161.200 provides:

"(1) Unless inconsistent with other provisions of chapter 743, Oregon Laws 1971, defining justifiable use of physical force, or with some other provision of law, conduct which would otherwise constitute an offense is justifiable and not criminal when:

"(a) That conduct is necessary as an emergency measure to avoid an imminent public or private injury; and

"(b) The threatened injury is of such gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of avoiding the injury clearly outweigh the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue.

"(2) The necessity and justifiability of conduct under subsection (1) of this section shall not rest upon consideration pertaining only to the morality and advisability of the statute, either in its general application or with respect to its application to a particular class of cases arising thereunder."

extra-legal action.

■ Defendants' alternative argument is that there is no proof that they intended to or actually did cause "public inconvenience, annoyance or alarm" by their actions in blocking the road. ORS 166.025(1).[2] We have held under other sections of the disorderly conduct statute that the state must prove actual inconvenience, annoyance or alarm to the public, because it is necessary to avoid unconstitutional vagueness. The question is whether a rational trier of fact could find that the acts which defendants intentionally committed could cause public inconvenience, annoyance or alarm; if so, the trier of fact could find also that defendants intended those consequences. *See State v. Clark,* 39 Or App 63, 591 P2d 752, *rev den* 286 Or 303 (1979).

■ Defendants intentionally blocked a public road. Although they stated that they would permit non-Willamette traffic to pass, they would necessarily have had to stop that traffic temporarily in order to determine whether it could move through their blockade. Although the conclusion is not compelled, a rational trier of fact could have determined that defendants' acts could cause public inconvenience and that defendants intended to cause that inconvenience. That is sufficient to justify the jury's verdict.

Affirmed.

---

[2] ORS 166.025(1) provides, in pertinent part:

"A person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, the person:

\* \* \* \* \*

"(d) Obstructs vehicular or pedestrian traffic on a public way \* \* \*."

Because defendants did not raise this argument in the trial court, we review only to determine whether there is any evidence to support their convictions. *See State v. Wagner,* 67 Or App 75, 77, 676 P2d 937 (1984).