Argued and submitted December 22, 1997, affirmed July 22, 1998

STATE OF OREGON,
*Respondent,*

*v.*

EDWARD DAVID WILLY,
*Appellant.*

(9603281CR; CA A96785 (Control))

STATE OF OREGON,
*Respondent,*

*v.*

STEVEN EARL DONOVAN,
*Appellant.*

(9603283CR; CA A96786)

STATE OF OREGON,
*Respondent,*

*v.*

DANIEL ARON POLLOCK,
*Appellant.*

(9603282CR; CA A96787)
(Cases Consolidated)

963 P2d 739

George W. Kelly argued the cause and filed the brief for appellants.

David J. Amesbury, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

Before Landau, Presiding Judge, and Riggs,* and Haselton, Judges.

LANDAU, P. J.

---

* Riggs, J., *vice* Leeson, J., resigned.

**LANDAU, P. J.**

Defendants appeal judgments of conviction for disorderly conduct. ORS 166.025. They assign error to the trial court's denial of their motion for judgment of acquittal, based on the state's failure to prove that their conduct actually disrupted more than two people. We affirm.

■■ We state the facts in the light most favorable to the state and review those facts to determine whether a rational trier of fact could have found defendants guilty beyond a reasonable doubt. *State v. Cunningham*, 320 Or 47, 63, 880 P2d 431 (1994), *cert den* 514 US 1005 (1995).

On November 30, 1996, the three defendants took four rifles, one shotgun, four handguns, and 360 rounds of ammunition to private property owned by defendant Willy's family. Defendants spent the evening and early morning hours shooting the guns, firing at least 125 rounds of ammunition. Melinda and Charles Radford, who live across the road and 800 feet away from where defendants were shooting, were disturbed by the loud gunfire, and they heard bullets pass through trees near their house. Melinda Radford was frightened, and neither Melinda nor Charles could sleep. Charles Radford called 9-1-1, but officers did not respond until the next morning when he called again to report that the shooting had not stopped. James Bursell, who lived approximately two miles away from where defendants were shooting, also heard the gunfire, but testified that he was not particularly alarmed or annoyed by it. Michael Moncardini had been annoyed by gunfire late at night on the Willy property on previous occasions. He had talked to defendant Willy about it and asked him to stop and had called 9-1-1. On November 30, however, Moncardini was away from home and did not hear the gunfire.

Defendants were charged with disorderly conduct. At the close of the state's case, they moved for judgments of acquittal on the basis of insufficiency of the evidence. Defendants argued that the state failed to prove that their conduct actually annoyed or alarmed more than two people, as required by decisions of this court construing the disorderly conduct statute. The court denied the motion.

■     On appeal, defendants argue that the trial court's decision cannot be reconciled with three decisions from this court—*State v. Clark*, 39 Or App 63, 591 P2d 752, *rev den* 286 Or 303 (1979); *State v. Stubblefield*, 42 Or App 201, 600 P2d 469 (1979); and *State v. Gilbert*, 48 Or App 419, 617 P2d 288 (1980)—that hold that evidence of actual inconvenience, annoyance or alarm to a substantial group of people is required to prove disorderly conduct. The state argues that our decisions in *Clark*, *Stubblefield* and *Gilbert* are incorrect and that, under our more recent decision in *State v. Hund*, 76 Or App 89, 708 P2d 621 (1985), *rev den* 300 Or 477 (1986), no such proof is required.

■     ORS 166.025 provides, in pertinent part:

> "(1)  A person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, the person:
>
> "* * * * *
>
> "(b)  Makes unreasonable noise[.]"

Whether that statute requires proof that defendants actually caused inconvenience, annoyance or alarm to the public is a question of statutory construction. In accordance with the interpretive methodology required by *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), we construe the statute first by reference to the text in its context and then, if necessary, by reference to legislative history and other interpretive aids.

    The text of the statute does not, by its terms, require proof of actual public inconvenience, annoyance or alarm to any particular number of persons. It requires proof that defendants either intended to cause one of those conditions or recklessly created a *risk* of inconvenience, annoyance or alarm to the public, and it requires proof that defendants made unreasonable noise. Nothing in the language of the statute lends support to defendants' contention that there must be proof that defendants actually caused public inconvenience, annoyance or alarm. In candor, however, we must acknowledge that our decisions are not altogether consistent on the point. We turn, then, to those cases.

In *Clark*, the defendant challenged ORS 166.025 on vagueness grounds. We began by observing that the statute was derived from New York Penal Law section 240.20. We then referred to a canon of construction that "[i]n borrowing a statute from another state, the legislature is assumed to adopt the then existing case law interpretation of that statute in the state of origin[.]" *Clark*, 39 Or App at 65. We cited three decisions of various New York trial courts, *Seymour v. Seymour*, 56 Misc 2d 546, 289 NY S2d 515 (1968); *People v. Coleman*, 47 Misc 2d 355, 262 NY S2d 508 (1965); and *People v. Broadbent*, 20 Misc 2d 547, 192 NY S2d 889 (1959), for the proposition that the disorderly conduct statute of that state required proof that the defendant actually caused public inconvenience, annoyance or alarm. We then stated:

> "The New York cases narrow the meaning of the statute to this extent: A defendant's act, no matter how reprehensible to any particular person, must disrupt a group of persons or a portion of the community at large and we accept that construction."

*Clark*, 39 Or App at 66. With that narrowed construction, we concluded that the statute posed no vagueness problem; we did not address whether the statute would have been unconstitutionally vague without the narrowing construction. *Id.* at 423.

In *Stubblefield*, the defendant was charged with reckless endangering. The complaint specifically charged him with unlawfully creating a substantial risk of serious physical injury to two persons. At trial, he unsuccessfully contended that he was entitled to a jury instruction on disorderly conduct as a lesser-included offense. We affirmed. We began by citing *Clark* for its holding that ORS 166.025(1) requires that the defendant " 'must disrupt a group of persons or a portion of the community at large.' " *Stubblefield*, 42 Or App at 204 (quoting *Clark*, 39 Or App at 66). Focusing on the "group of persons" language, we then held that, because the complaint charged the defendant with putting at risk only two persons, his conduct "was not the type of 'public' risk" required under *Clark*. *Id.* at 205.

Finally, in *Gilbert*, the defendant challenged the sufficiency of the evidence of disorderly conduct on the ground

that the state had proved that only two persons had been inconvenienced, annoyed or alarmed by his conduct, although the defendant's conduct occurred on a public sidewalk. We reversed, citing *Clark* and *Stubblefield*, commenting that the statute requires proof of a risk of inconvenience to the public, which is not satisfied by proof of inconvenience to only two persons. *Gilbert*, 48 Or App at 423. We acknowledged that the defendant's conduct occurred on a public sidewalk. We nevertheless held that the conduct did not constitute a "public" risk, because only two persons actually were present at the time. *Id*. at 423.

In *Hund*, the defendants stood across a bridge over a creek in an old growth forest to prevent logging trucks from crossing the creek. They were charged with disorderly conduct. At trial, the defendants moved for a judgment of acquittal on the ground that the state had failed to prove that they intended to or actually did cause public inconvenience, annoyance or alarm. The trial court denied the motion, and the jury found them guilty. We affirmed. We first noted that, under *Clark*, the state must prove actual inconvenience, annoyance or alarm to the public. *Hund*, 76 Or App at 93. But we then went on to hold:

"The question is whether a rational trier of fact could find that the acts which defendants intentionally committed could cause public inconvenience, annoyance or alarm; if so, the trier of fact could find also that defendants intended those consequences.

"Defendants intentionally blocked a public road. * * * [T]hey would necessarily have had to stop * * * traffic temporarily in order to determine whether it could move through their blockade. Although the conclusion is not compelled, a rational trier of fact could have determined that defendants' acts could cause public inconvenience * * *. That is sufficient to justify the jury's verdict."

*Id*. (citation omitted).

*Clark* thus holds that ORS 166.025(1) requires proof of actual disruption to the public. *Stubblefield* and *Gilbert* perhaps more narrowly hold that only a risk of public disruption is required, but that the "public" nature of the risk is defined by the number of persons who actually were present.

*Hund*, somewhat anomalously, reiterates the broader holding of *Clark*, but then also holds that evidence that a defendant's acts merely *could have* disrupted the public suffices.

■     The linchpin of the first three decisions is the holding that our interpretation of ORS 166.025(1) is limited by prior New York case law. That linchpin, however, is flawed for two reasons. First, the rule invoked as the basis for relying on the New York cases was misapplied. Properly stated, it is that, when the Oregon legislature borrows a statute from another state, we are permitted to infer that the legislature intended to adopt also the interpretations of the borrowed statute made *by the highest court* of the originating state. *Jones v. General Motors Corp.*, 325 Or 404, 418, 939 P2d 608 (1997) ("If the Oregon Legislature adopts a statute or rule from another jurisdiction's legislation, we assume that the Oregon Legislature also intended to adopt the construction of the legislation that the highest court of the other jurisdiction had rendered before adoption of the legislation in Oregon."); *Fleischhauer v. Bilstead et al, Gray et ux*, 233 Or 578, 585, 379 P2d 880 (1963) (applying the "presumption that when the legislature adopts the statute of another state it intends to adopt also the construction theretofore placed upon the statute by the highest court of that state"). In *Clark*, we relied on three decisions of New York *trial* courts, opinions of single judges in each case.

Second, and more important, two of the three decisions on which we relied involved a different version of the New York statute from the one that the Oregon Legislature adopted. In *Coleman and Broadbent*, the applicable version of the disorderly conduct statute, *former* New York Penal Law section 722, expressly required proof that defendant acted "in such a manner as to annoy, disturb, interfere with, obstruct or be offensive to others" or that defendant made a noise "during the nighttime to the annoyance or inconvenience of any considerable number of persons." That statute was amended in 1965, and the amended version—the version that the Oregon Legislature later borrowed—does not contain that language. New York Penal Law § 240.20 (1965). The third New York decision, *Seymour*, did involve the amended version of the statute, but it also concerned a different subsection and a different issue from what was addressed in *Clark*.

*Clark, Stubblefield* and *Gilbert* were wrongly decided. There is no support in the language of ORS 166.025(1) for their holding that the statute requires proof of actual public inconvenience, annoyance or alarm or that the "public" nature of inconvenience, annoyance or alarm is determined by reference to the number of persons actually so affected. And the reasoning supporting their conclusions to the contrary, that is, their reliance on New York trial court decisions construing a dissimilar statute, is plainly incorrect.

Closer to the language of the statute is *Hund*, in which we examined the record for evidence that could have persuaded a rational trier of fact that the defendant could have caused public inconvenience without requiring evidence that anyone actually was inconvenienced. That is consistent with the statutory reference to proof that the defendant recklessly caused a *risk* of public inconvenience, annoyance or alarm.

We turn, then, to the sufficiency of the evidence in this case. Defendants fired at least 125 rounds of ammunition from late night to the early hours of the morning. They fired across a public roadway and in the direction of a residence. The noise was loud and could be heard at least two miles away. Members of the public lived well within that range of hearing. Two individuals who heard the shots actually were frightened by the noise. As in *Hund*, although the conclusion is not compelled, a rational trier of fact could have determined on the foregoing facts that defendants' acts created a risk of public inconvenience, annoyance or alarm. That is sufficient to justify the jury's verdict.

Affirmed.