Submitted October 28, 2015, reversed December 14, 2016

**STATE OF OREGON,**
*Plaintiff-Respondent,*

*v.*

**JASON LEE HOSLEY,**
*Defendant-Appellant.*

Marion County Circuit Court
13C46115; A156514

388 P3d 387

Peter Gartlan, Chief Defender, and Meredith Allen, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Robert M. Wilsey, Assistant Attorney General, filed the brief for respondent.

Before Duncan, Presiding Judge, and DeVore, Judge, and Flynn, Judge.

## FLYNN, J.

In this appeal from a judgment of conviction for disorderly conduct based upon "[e]ngag[ing] * * * in threatening behavior," ORS 166.025(1)(a), defendant assigns error to the trial court's denial of his motion for judgment of acquittal. We agree that the evidence is legally insufficient to permit a finding that defendant engaged in the kind of physical act of aggression that this court has construed ORS 166.025(1)(a) to require. Accordingly, we reverse the judgment.

We describe the pertinent facts according to our standard of review, which requires us to draw all reasonable inferences in favor of the state. *See State v. Richardson*, 277 Or App 112, 115, 370 P3d 548 (2016). Defendant lived in the same neighborhood as a seven-year-old girl, T, and her family. He had interacted with T's father a handful of times when they saw each other in the neighborhood. T knew defendant as "the mushroom man," because she knew he lived in a house with a large mushroom in front. The father testified that defendant may have commented that the father had beautiful children. On one occasion, the father had caught defendant trespassing in the family's backyard looking for cans, and the father told defendant that he was uncomfortable with defendant being on the property.

The conviction is based on conduct that occurred on a summer day when T's father was in the front yard of his home setting up a Slip 'N Slide for T, who was waiting in her bathing suit. Defendant walked past and asked the father for a cigarette; the father gave him one and the men made "very small" talk before the father returned to the Slip 'N Slide. A few moments later, the father turned around and saw defendant pick up and hug T. Defendant became distraught and cried as he hugged T, and the father saw defendant say something to her. Defendant then put T down and walked away, still crying. T testified that defendant told her "he wanted a girl as pretty as" her. She also testified that defendant picked her up "like [her] mom does sometimes," which made her feel "[w]eirded out." When asked to describe his reaction, T's father testified that "obviously" he was "upset at first, but at the same time

there was a man hugging my daughter who was crying and very distraught." He "didn't want to accelerate any kind of situation with [defendant] at the time," and "something told" T's father to let defendant walk away once defendant set T down.

The next morning, T's father found an envelope on his front porch that contained a letter addressed to "[father] & his family" that thanked them for their "respect, hospitality and * * * tolerance" during "some of the most difficult of times." Included with the letter was a page containing a "promise," with a signature line for T and a signature line on which defendant had already signed his name. Above the signature lines, the page set out a promise that

"IF ANY BOY OR OLDER MAN EVER TOUCHES MY PR[I]VATES OR HURTS ME IN ANY BAD WAY, I PROMISE I WILL TELL MY DADDY!"

(Uppercase in original.) A third page instructed, "Okay. Sign and give to your mother. And we won't worry about this no more," along with the comment, "your Daddy is COOL." The letter made T's father "so angry that there could have been a physical confrontation."

Based on these events, defendant was charged with one count of disorderly conduct under ORS 166.025(1)(a), which provides:

"(1)   A person commits the crime of disorderly conduct in the second degree if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, the person:

"(a)   Engages in fighting or in violent, tumultuous or threatening behavior[.]"

The indictment alleged that defendant violated that statute by engaging in behavior that was "threatening." Defendant waived a jury and tried his case to the court. The court found defendant guilty of disorderly conduct as charged after denying defendant's motion for judgment of acquittal. On appeal, defendant argues that the court was required to grant the motion because he did not engage in the kind of

behavior that is required for a conviction under paragraph (1)(a). As indicated above, we agree.

Over the past 30 years, our cases applying ORS 166.025(1)(a) have construed that statute in a manner that will not infringe upon constitutionally protected speech. *See, e.g., State v. Cantwell,* 66 Or App 848, 676 P2d 353, *rev den,* 297 Or 124 (1984). In *Cantwell,* we concluded that the terms "fighting" and "violent, tumultuous or threatening behavior" in paragraph (a) refer only to "physical acts of aggression, not speech[.]" *Id.* at 852. We also concluded that ORS 166.025(1)(a) makes unlawful only the use of "physical force" or "physical conduct which is immediately likely to produce the use of such force," when the person engages in that behavior with the requisite mental state—intending to cause or recklessly creating a risk of "public inconvenience, annoyance or alarm." *Id.* at 853. Thus, to prove a violation of ORS 166.025(1)(a), the state "must prove that the defendant—with the requisite mental state—either used 'physical force' or engaged in 'physical conduct which is immediately likely to produce the use of' physical force." *Richardson,* 277 Or App at 117 (quoting *Cantwell,* 66 Or App at 853). We observed in *State v. Atwood,* 195 Or App 490, 498, 98 P3d 751 (2004), that the common meaning of "physical force" "connotes the actual use of strength or power."

As a further guarantee that the statute does not infringe on protected speech, we have excluded conduct that is "primarily speech" from our definition of "physical conduct." *See Richardson,* 277 Or App at 118. A person's speech may provide circumstantial context for determining whether or not the person's conduct was "immediately likely to result in physical force," but ORS 166.025(1)(a) does not reach "conduct that is *itself* speech" or that is "primarily speech." *Id.* at 118-19 (emphasis in original).

Defendant argues that no rational factfinder could infer that his act of picking up and hugging T met the *Cantwell* test of "physical force" or "physical conduct which is immediately likely to produce the use of" physical force. The state does not suggest that defendant engaged in physical force, but contends that both the act of picking up T

and the act of leaving the letter constitute "physical conduct immediately likely to produce the use of physical force."[1]

At the outset, we reject the state's contention that the communicative act of leaving a letter can support defendant's disorderly conduct conviction. The statute does not reach physical conduct that is "actual but incidental" to a defendant's speech. *Atwood*, 195 Or App at 498. We have specifically exempted physical acts that are a "'common method of gaining someone's attention,'" such as banging on a door and shouting for someone to open it. *Richardson*, 277 Or App at 117-18 (quoting *State ex rel Juv. Dept. v. Krieger*, 177 Or App 156, 161, 33 P3d 351 (2001)); *see also Krieger*, 177 Or App at 160-61 (youth's physical act of "grabbing hold of someone's shoulder" to gain the person's attention is not disorderly conduct); *cf. State v. Miller*, 226 Or App 314, 318, 203 P3d 319 (2009) (kicking a sign was not "incidental physical conduct" because it was not incidental to speech—the defendant did not "kick the sign as a common method of gaining someone's attention" (internal quotation marks omitted)). When defendant left the letter on T's porch, he engaged in a common method of gaining someone's attention, and that communicative act is not proscribed by ORS 166.025(1)(a). Nor can defendant's after-the-fact letter provide context for evaluating his prior contact with T. *See Krieger*, 177 Or App at 161 (youth's request that another student help him blow up his school could not give context to his prior, completed act of grabbing the student by the shoulder).

We also conclude that defendant's act of picking up and holding T cannot support his conviction for disorderly conduct. Although that behavior involved physical conduct that was more than incidental to any statements that defendant made to T, there is no evidence to permit an inference that defendant was engaging in the kind of behavior that ORS 166.025(1)(a) reaches. As we have emphasized, we

---

[1] We observed in *Atwood* that *Cantwell*'s formulation left unanswered whether the defendant's conduct must be immediately likely to produce the use of force by the defendant or by a person witnessing the defendant's conduct. 195 Or App at 498. We left that question unresolved because we concluded that the evidence was insufficient to permit a trier of fact to infer that the defendant's conduct was immediately likely to produce the use of physical force by either the defendant or by those exposed to the conduct. *Id.* For the same reasons, we need not resolve that question in this case.

concluded in *Cantwell* that the terms "fighting," "violent," "tumultuous," and "threatening" in paragraph (a) "describe physical acts of aggression": conduct that is either physical force or "immediately likely" to produce physical force. 66 Or App at 852.

Our cases affirming convictions for disorderly conduct under ORS 166.025(1)(a) illustrate the kind of conduct that the statute will reach. In *State ex rel Juv. Dept. v. Saechao*, 167 Or App 227, 234, 236-37, 2 P3d 935, *rev den*, 331 Or 283 (2000), this court concluded that the youth engaged in "tumultuous" behavior for purposes of ORS 166.025(1)(a) when he joined a group of boys to threaten and surround a victim, preventing the victim's escape while another boy attacked him. Similarly, in *State v. Davies*, 195 Or App 534, 536-37, 98 P3d 757 (2004), we affirmed a conviction under ORS 166.025(1)(a) based on evidence that the defendant "aggressively" and physically confronted store employees who had asked him to leave, after which "[a] fracas ensued, resulting in various injuries to several employees." The defendant's conduct included poking or hitting a store employee in the chest and striking out at the employee. *Id.* at 537. Finally, in *Miller*, 226 Or App at 316-18, we concluded that the defendant engaged in "physical acts of aggression" when he kicked a three-foot-tall, metal sign hard enough to send it off of the sidewalk and into the middle of a four-lane road, because "he was frustrated that it was blocking the sidewalk."

Moreover, in assessing whether a person's physical conduct rises to the level of "immediately likely" to produce physical force, the conduct must be "viewed in totality of the circumstances." *Atwood*, 195 Or App at 498. For example, in *Atwood*, although the defendant engaged in an angry confrontation with the principal of his daughter's school, including gesturing angrily and yelling an obscene threat against a third party "at the top of his lungs," we held that the evidence was legally insufficient to support the defendant's conviction for "tumultuous or threatening" disorderly conduct when viewed in the context of the totality of the circumstances. *Id.* at 493-94. Those circumstances included statements that made it clear that the defendant's anger was directed at a person who was behind a closed door. *Id.*

at 499. The court also considered how the defendant's conduct was perceived by the school principal, who "was not concerned for his own safety—notwithstanding [the] defendant's physical conduct and angry demeanor" and who "by extension, would not have responded to that conduct with physical force." *Id.* at 499-500. In the context of those circumstances, the court concluded that the evidence was "insufficient to support a finding that [the] defendant had engaged in physical conduct that was 'immediately likely to produce the use of [physical] force'" either by the defendant, or by an "objectively reasonable person in [the principal's] position."

Based on the guidance supplied by our prior case law, we conclude that the evidence was legally insufficient to permit the trier of fact to infer that defendant engaged in behavior that was a threatening physical act of aggression. Although defendant's act of picking up and hugging a young girl who barely knew him may have transgressed ordinary social boundaries,[2] neither T nor her father described defendant's behavior in terms from which a factfinder could infer that defendant's behavior was an act of aggression when viewed in the totality of the circumstances. Defendant was not a total stranger, he had just finished a brief, sociable interaction with T's father, and he was distraught and crying during the encounter with T.

Moreover, there is no evidence that either T or her father perceived defendant as threatening aggression against T. T felt "[w]eirded out" to be held in the way her mother holds her, and T's father was "upset" but not motivated to confront defendant, given defendant's distraught demeanor. Although their reactions are "not necessarily dispositive of how an objectively reasonable person" would have reacted to defendant, their testimony indicates that defendant's conduct did not appear outwardly threatening, and

---

[2] The state did not allege that defendant's contact with T constituted the crime of harassment, which reaches "offensive physical contact" if done with the intent to harass, ORS 166.065(1)(a), or that defendant hugged T in an attempt to commit the crime of sexual abuse in the third degree, which prohibits contact with a minor's "intimate parts * * * for the purpose of arousing or gratifying the sexual desire." ORS 163.305(6) (defining sexual contact); ORS 163.415 (prohibiting sexual contact).

we perceive no reason "why an objectively reasonable person in [that] position would have been likely to respond differently." *See Atwood*, 195 Or App at 500. In short, the evidence was legally insufficient to permit the trier of fact to infer that defendant's conduct, when viewed in the totality of the circumstances, was "immediately likely to produce" physical force, either by defendant or by T or her father. Defendant was entitled to a judgment of acquittal.

Reversed.