No. 484          June 3, 2026          243

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RICKI SCOTT COLLIN,
*Defendant-Appellant.*

Lane County Circuit Court
21CR53965; A184909

Kamala H. Shugar, Judge.

Submitted March 3, 2026.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Peter G. Klym, Deputy Public Defender, Oregon Public Defense Commission, filed the briefs for appellant. Ricki Collin filed the supplemental brief pro se.

Dan Rayfield, Attorney General, Benjamin Gutman, Interim Deputy Attorney General, and Erica L. Herb, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, Joyce, Judge, and Hellman, Judge.

JOYCE, J.

Affirmed.

**JOYCE, J.**

Defendant appeals a judgment of conviction for second-degree disorderly conduct and second-degree criminal trespass, raising two assignments of error. In his first assignment of error, defendant claims that the trial court erred by denying his motion for a judgment of acquittal (MJOA) on the disorderly conduct count. In defendant's second assignment of error, he contends that the trial court plainly erred when it failed to instruct the jury that it had to concur on either a principal or aiding and abetting theory of liability for both counts. Finally, defendant raises four *pro se* supplemental assignments of error, all of which are unpreserved. Defendant does not request plain error review for these supplemental assignments of error and we reject them without further discussion. *See State v. Webb*, 342 Or App 426, 445, 576 P3d 995, *opinion adh'd to as modified on recons*, 344 Or App 365, 578 P3d 1290 (2025) (rejecting the defendant's *pro se* supplemental assignments of error because they were unpreserved and the defendant did not request plain error review).

We conclude that the trial court did not err in denying defendant's MJOA. We also conclude that the trial court plainly erred when it did not provide a jury concurrence instruction that required the jury to agree on a theory of liability for the disorderly conduct and criminal trespass counts. However, because the error was harmless with respect to both counts, we affirm.

*Motion for judgment of acquittal:* In defendant's first assignment of error, he contends that the trial court erred by denying his MJOA on the disorderly conduct count, arguing that the evidence was legally insufficient to prove that defendant both "inten[ded] to cause public inconvenience, annoyance or alarm, or recklessly creat[ed] a risk thereof" and "[e]ngage[d] in fighting or in violent, tumultuous or threatening behavior." ORS 166.025(1)(a). He raised the same issue in his MJOA in the trial court, so the claim of error is preserved. The state maintains that the trial court properly denied the MJOA.

On review of the denial of an MJOA, our task is to examine the evidence "in the light most favorable to the state to determine whether a rational trier of fact, accepting reasonable inferences and reasonable credibility choices, could have found the essential element[s] of the crime beyond a reasonable doubt." *State v. Cunningham*, 320 Or 47, 63, 880 P2d 431 (1994), *cert den*, 514 US 1005 (1995). To the extent inferences from circumstantial evidence are necessary to prove an element, it is a question of law what reasonable inferences may be made from the evidence. *State v. Bivins*, 191 Or App 460, 467, 83 P3d 379 (2004). Reasonable inferences are allowed, but "speculation and guesswork are not." *Id*.

A person commits second-degree disorderly conduct, as charged here, when a person, "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof," "[e]ngages in fighting or in violent, tumultuous or threatening behavior[.]" ORS 166.025(1)(a). The first element requires the state to prove that a "defendant consciously disregarded an unjustifiable risk that [their] behavior would affect not just specific individuals, but the public in general." *State v. Love*, 271 Or App 545, 554, 351 P3d 780 (2015). "The text of [ORS 166.025(1)] does not, by its terms, require proof of actual public inconvenience, annoyance or alarm to any particular number of persons. It requires proof that defendants either intended to cause one of those conditions or recklessly created a *risk* of inconvenience, annoyance or alarm to the public[.]" *State v. Willy*, 155 Or App 279, 283, 963 P2d 739 (1998) (emphasis in original).

As to the second element, because there is no statutory definition of "violent, tumultuous or threatening behavior," this court has narrowly construed the language to avoid infringing on constitutionally protected speech. *State v. Hosley*, 282 Or App 880, 883, 388 P3d 387 (2016). Thus, "ORS 166.025(1)(a) makes unlawful only the use of physical force or physical conduct which is immediately likely to produce the use of such force." *State v. Cantwell*, 66 Or App 848, 853, 676 P2d 353, *rev den*, 297 Or 124 (1984). While "[a] person's speech may provide circumstantial context for determining whether or not the person's conduct was 'immediately likely

to result in physical force,'" a person's conduct that is itself speech or primarily speech will not fall within the scope of physical conduct that ORS 166.025(1)(a) prohibits. *Hosley*, 282 Or App at 883.

With that legal framework, we turn to the evidence. Defendant and his girlfriend, Hall, travelled to Eugene to confront government officials about Oregon's mask mandate and attempted to enter the municipal courthouse without wearing masks. After leaving the courthouse, defendant and Hall went to a local cookie shop because they had heard the owner, D, "was using violence to enforce what she believed to be the correct way to enforce the [mask] mandate."

Defendant livestreamed the following incident at issue from his phone, and that video was admitted into evidence. As defendant and Hall approached the shop, defendant said, "About to go test these guys at this cookie place. Got reports of this business owner chasing—chasing some people out of their store with a baseball bat. Should be right around this corner here." Once defendant and Hall entered the shop, D began to ask if they had masks, and Hall responded, "I don't wear a mask." D said that they could not come in without masks, and defendant responded that D could not deny "public services" to anyone. D then asked defendant and Hall to leave her shop and told them they were now trespassing. In an attempt to move them out of the shop, D approached Hall chest-to-chest with her arms extended. Defendant told D, "Don't touch her." While continuing her attempt to usher them out of the shop, D "brushed up against" Hall, and Hall pushed D. D then retrieved a baseball bat from behind the shop counter while defendant said, "Don't fucking touch her." D walked back to defendant and Hall with her bat in hand, telling them to leave and saying she had "the right to use reasonable force." D approached Hall with her bat pointed at her, and Hall grabbed the bat, pulling D towards her. Hall then began to physically attack D.

During the beginning of the attack, the video was shaking and did not clearly show defendant's physical interaction with Hall and D. However, D testified that the three

of them became "sort of entangled," and defendant at some point grabbed D's bat from her hands. Defendant also testified that he had grabbed the bat from D during the altercation. Hall and D then fell to the floor as defendant exited the store with his phone still recording the incident. Defendant said, "Somebody call the police on this lady," and D continued screaming for help and yelling at Hall to get out. At the same time, a person walked outside through a neighboring door, looked towards the shop, then turned and walked back inside. Shortly after, Hall exited the shop through the open shop door, leaving D inside on the floor. Defendant then told D, while pointing her bat at her, "You don't get to fucking assault people and run a business. Yeah, we'll be calling the cops on you. Don't worry." As defendant was walking away, D told defendant to give her the bat back, to which defendant responded, "Fuck off. You don't get to keep your weapon after you assault someone with it."

In viewing the evidence in the light most favorable to the state, we conclude that the evidence was legally sufficient for a rational factfinder to conclude that defendant had acted "with intent to cause public inconvenience, annoyance or alarm, or recklessly creat[ed] a risk thereof." As just described, the evidence shows that defendant and Hall initiated and livestreamed the verbal altercation with D about the state's mask mandate in a publicly accessible place (D's shop) in downtown Eugene during regular daytime business hours while the front door was open. Even accepting that most of the altercation occurred inside of the shop, the fact that the altercation occurred in a public store during the day and was livestreamed to defendant's online audience is sufficient for a rational factfinder to conclude that defendant at least recklessly created a risk that any members of the public who walked near or into the store, or who viewed defendant's livestream, would have experienced "inconvenience, annoyance or alarm." And while evidence of *actual* public inconvenience or alarm is unnecessary to prove this element, the fact that an uninvolved member of the public witnessed the altercation adds to the evidence a rational factfinder could use to conclude that defendant recklessly created a risk of public inconvenience by engaging in the conduct at issue.

The evidence was also legally sufficient for a rational factfinder to conclude that defendant had engaged in "fighting or in violent, tumultuous or threatening behavior." The record shows at least one act by defendant that a reasonable factfinder could conclude constitutes physical conduct which is immediately likely to result in physical force: defendant's grabbing of the baseball bat from D. The circumstantial context surrounding that physical conduct, including some of defendant's speech, further supports such a finding. Defendant and Hall entered D's shop and immediately confronted her about the state's mask mandate and trespass law. When D brushed against Hall while attempting to usher defendant and Hall out of the shop, Hall shoved D. Then, when D went to retrieve her baseball bat, defendant warned D to not "fucking touch" Hall. When D approached Hall with the baseball bat, Hall began physically attacking D. D testified that it was at this point that defendant, while "entangled" in the fight, grabbed and removed the bat from D's hands. Given the surrounding context of the immediately preceding verbal confrontation, the attempts by D to remove defendant and Hall from the premises under threat of "reasonable force," and Hall's physical assault on D, a rational factfinder could conclude that defendant's physical act of grabbing the bat from D was immediately likely to result in either physical force from defendant or further physical force from Hall. Thus, the trial court did not err in denying defendant's MJOA.

*Jury concurrence:* In defendant's second assignment of error, he contends that the trial court erred when it failed to instruct the jury that it had to concur on a single theory of liability for the disorderly conduct and criminal trespass charges. Defendant concedes that he did not preserve this claim and asks this court to review for plain error.

An error is "plain" if it (1) is one of law, (2) is "obvious" and "not reasonably in dispute," and (3) appears "on the face of the record." *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381, 823 P2d 956 (1991). In the context of jury instructions, because "the question of what must be included in a jury instruction is a question of law, and what was or was not included is determined readily by examining the

instructions that were given[,] * * * the only issue is whether the error[] w[as] 'obvious.'" *State v. Lotches*, 331 Or 455, 472, 17 P3d 1045 (2000), *cert den*, 534 US 833 (2001).

We review a trial court's jury instructions for errors of law, and "[i]n determining whether evidence supports giving an instruction, this court reviews the evidence in the light most favorable to the party requesting the instruction." *State v. Burris*, 301 Or App 430, 432, 456 P3d 684 (2019). The relevant procedural facts are as follows. During closing arguments, the state reiterated its theory that defendant had aided and abetted Hall in committing assault and burglary. The state also clarified that defendant was liable for criminal trespass and disorderly conduct "simply based on [his] own actions," and "not under an aiding and abetting theory." The state added that "[t]his doesn't have to do with just aiding and abetting Ms. Hall when it comes to criminal trespass and disorderly conduct. Those are 100 percent the actions of [defendant] himself." At the end of its closing argument, the state again asked the jury to find defendant guilty on an aid-and-abet theory for the assault, harassment, and burglary charges, but noted that "the disorderly conduct and the criminal trespass [charges are] based entirely on [defendant's] own actions."

During the state's rebuttal closing argument, it again explained the aid-and-abet theory, but then asked the jury to "find [defendant] guilty of all five counts proposed," and that if it "[could] not find it on the theory, for the charges in which he can be held responsible, himself, for his actions, that you do hold him responsible by being criminally liable by aiding and abetting Ms. Hall's actions that day."

During jury deliberations, the jury sent the court a question asking, "Aiding [and] abetting applies to which specific charges?" Defendant objected to the court's suggested answer that the jury could apply the theory to all the charges. The court responded that "the law of aid and abet can be applied to any count." Defendant argued that the state presented its case differently, and the court responded that defendant had not "require[d] the state to elect that theory as to a particular charge," and it "didn't give [the jury] an instruction that it only applied to certain charges."

Defendant explained that "the concern is confusion" and reiterated that "aiding and abetting would only apply to the first three counts: burglary, the harassment, and the assault." The state supported the court's suggested answer as a "correct statement of the law" but noted that the law was "probably not as clear to the jury since the question came up." The court concluded that it would not "limit[ ] the use of aid and abet, since [they] didn't discuss it and neither party requested it." It then submitted the following answer to the jury: "Answer to Question #1: You may find that aid and abet applies to none of the charges, some of the charges, or all of the charges." The jury acquitted defendant of the burglary, harassment, and assault counts, but returned a guilty verdict for the disorderly conduct and criminal trespass counts.[1]

To return a guilty verdict, all jurors must agree that the "state has prove[n] each legislatively defined element of a crime" beyond a reasonable doubt. *State v. Pipkin*, 354 Or 513, 527, 316 P3d 255 (2013). Since the elements necessary to prove liability as an aider and abettor[2] "ordinarily will not be coextensive with the elements necessary to prove liability as a principal," the jury must agree that the state has proven each element under a single theory of liability. *State v. Phillips*, 354 Or 598, 606, 317 P3d 236 (2013). Within the plain error context, "[a]fter *Phillips*, it is 'obvious' that, when the state advances competing theories of liability based on a defendant's acts as principal or as an aider-and-abettor * * * a jury must be instructed that [it] must agree that the

---

[1] The state argues on appeal that the error is not "obvious" and thus "reasonably in dispute" in part because the jury's question about aid-and-abet liability and the court's answer to that question are not in the record on appeal. However, in reviewing the record we found that it includes both documents.

[2] ORS 161.155(2) provides, in part:

"A person is criminally liable for the conduct of another person constituting a crime if:

"* * * * *

"(2) With the intent to promote or facilitate the commission of the crime the person:

"* * * * *

"(b) Aids or abets or agrees or attempts to aid or abet such other person in planning or committing the crime[.]"

defendant is liable under one theory or the other." *State v. Gaines*, 275 Or App 736, 748, 365 P3d 1103 (2015).

Here, the state acknowledges that, while the jury instructions included a section on aid-and-abet liability,[3] the trial court did not instruct the jury that it had to agree on a theory of liability for each count. The state nevertheless argues that the absence of a jury concurrence instruction here was not "obvious" plain error because, in the state's view, it only advanced a principal liability theory for the disorderly conduct and criminal trespass charges for which defendant was convicted; thus, there were no "competing theories of liability" with respect to those charges. *See State v. Miranda*, 290 Or App 741, 487, 417 P3d 480 (2018) (concluding that the failure to provide a concurrence instruction for the child endangerment charges was not "obvious" plain error because "the state's only argument to the jury in closing was that defendant was liable [for those charges] as an accomplice" and "no meaningful principal liability theory [was] presented to the jury").

While the state may not have intended to advance both principal and aid-and-abet theories for the disorderly conduct and criminal trespass charges, the court's answer to the jury's question regarding the aid-and-abet theory nevertheless presented both theories to the jury with respect to those charges. We acknowledge that during closing argument, the state reiterated multiple times that it was not advancing an aid-and-abet theory for the disorderly conduct and criminal trespass charges specifically. However, the record shows that the jury asked the court to clarify which charges the state's aid-and-abet theory applied to, and the court, despite defendant's objection, submitted an answer stating the jury could apply the theory to "none of the charges, some of the charges, or all of the charges." In light of these procedural facts, we conclude that the jury was ultimately presented with competing theories of liability for all of the charges. Under *Gaines*, the absence of a

_____

[3] The aid-and-abet section of the main jury instructions states: "A person aids or abets another person in the commission of a crime if the person: (1) With the intent to promote or make easier the commission of the crime, (2) Encourages, procures, advises, or assists, by act or advice, the planning or commission of the crime."

jury concurrence instruction under such circumstances was plain error.

We next address whether that error was harmless, *i.e.*, whether there was little likelihood that the error affected the verdict. *State v. Horton*, 327 Or App 256, 262, 535 P3d 338 (2023) (noting that if a plain error is harmless, we have no discretion to correct it and must affirm). In making this determination, we consider the jury instructions as a whole, the evidence in the case, and the competing theories of liability as applied to the disorderly conduct and trespass statutes, respectively. *See Phillips*, 354 Or at 608 (concluding that the absence of a jury concurrence instruction was harmless because the two competing theories of liability in that case did not require "proof of discrete, separate facts" to prove the causation element of third-degree assault under either theory); *Burris*, 301 Or App at 432 ("For an error in jury instructions to constitute reversible error, it must have prejudiced the defendant when the instructions are considered as a whole.").

Disorderly conduct as charged here requires the state to prove that the defendant personally, "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof," "[e]ngage[d] in fighting or in violent, tumultuous or threatening behavior." ORS 166.025(1)(a). Under a principal theory of liability, the latter element would require proof that defendant himself either engaged in "physical force" or "physical conduct which is immediately likely to produce the use of such force." *Cantwell*, 66 Or App at 853. Under an aid-and-abet theory of liability, however, the state would have to prove only that defendant aided or assisted Hall in engaging in the requisite physical force or conduct to commit disorderly conduct.

In light of the evidence in this case, we conclude that there is little likelihood that the jury would have returned a different verdict had the trial court provided it with the appropriate jury concurrence instruction. Defendant's primary physical conduct that would support a conviction of disorderly conduct under either theory was his act of grabbing and taking the victim's baseball bat from her hands. The evidence of that act was undisputed; the video

recording showed that defendant obtained the victim's bat at some point during Hall's assault on the victim, and both the victim and defendant testified that he had taken the bat from her during the altercation. While it is possible that a juror found that defendant's physical act of grabbing the bat was insufficient to support a guilty verdict under a principal theory of liability and instead found defendant guilty under aid-and-abet liability based on other conduct (such as his livestreaming the incident), such an outcome is highly unlikely in light of the undisputed evidence before the jury of defendant grabbing and taking the bat. Because there is little likelihood that the jury returned a guilty verdict under either theory of liability based on different facts, the jury concurrence error was harmless with respect to the disorderly conduct charge.

Second-degree criminal trespass under a principal theory of liability requires the state to prove that defendant personally "enter[ed] or remain[ed] unlawfully *** upon premises." ORS 164.245(1). Under an aid-and-abet theory, the state would have to prove that defendant aided or assisted Hall in entering or remaining unlawfully on the premises of D's shop, which would not necessarily require facts showing that defendant entered and/or remained on the premises. The main jury instructions defined "enter or remain unlawfully" as including, among other things, the failure to "leave premises that are open to the public after being lawfully directed to do so by the person in charge."

The video evidence here showed defendant entering D's shop with Hall and, after D told defendant and Hall to leave, remaining inside the shop long enough to film the physical altercation and to take D's bat from her. There is no "discrete set of facts" here that would support one theory of liability but not the other. In other words, a jury's finding that defendant "aided and abetted" Hall's trespass of D's shop would necessarily be based, at least in part, on a finding that defendant had simultaneously entered and refused to leave the property alongside Hall, which also proves trespass under a principal liability theory. *See Phillips*, 354 Or at 613 ("Even though the trial court should have given defendant's requested instruction to that effect, the error

was harmless because, on the facts in this case, the factual findings necessary to find defendant liable on one theory either subsumed or were the same as the factual findings on the other theory."). Considering this evidence, there is little likelihood that the lack of a jury concurrence instruction affected the verdict for the trespass count.

Having found that the plain error was harmless with respect to both charges, we "have no discretion [to correct the error] and must affirm." *Horton*, 327 Or App at 262.

Affirmed.